**The STATE of Ohio, Appellant,**

v.

**JOHNSON, Appellee.**

[Cite as *State v. Johnson*, 169 Ohio App.3d 552, 2006-Ohio-6227.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21639.

Decided Nov. 22, 2006.

Raymond J. Dundes, for appellant.

Jon Paul Rion, for appellee.

WOLFF, Judge.

{¶ 1} The state of Ohio appeals from an order dismissing its complaint against Lisa Johnson with prejudice. The basis for the dismissal was the state's failure to provide discovery and because the court was "out of time on this."

{¶ 2} The state assigns error as follows:

{¶ 3} "1. The trial court erred when it denied the state's request for a short continuance of the trial in this matter and dismissed the case."

{¶ 4} The complaint against Johnson, filed October 19, 2005, alleged:

{¶ 5} "Lisa Johnson submitted a treasurer's report on November 5, 2003 to the West Carrollton Recreation Association board meeting that deposits made for September and October were conflicting with Farmers and Merchants Bank statement."

{¶ 6} On October 20, Johnson, by counsel, entered a not-guilty plea, requested a pretrial conference, and waived her speedy-trial rights under R.C. 2945.71 et seq. On October 21, 2005, the trial court scheduled this matter for a *pretrial* conference on January 23, 2006. On that day, Johnson filed a jury demand, and a "prejury pretrial" conference was scheduled for February 13, 2006. On that day, a jury trial was scheduled for March 30, 2006.

{¶ 7} Johnson's demand for discovery, filed October 24, 2005, contained seven specific requests, none of which is pertinent to this appeal, and an eighth, general request, for "[a]ll other matters discoverable pursuant to Criminal Rule 16."

{¶ 8} On February 1, 2006, Johnson moved for a bill of particulars. The bill of particulars, filed March 20, contained virtually the same operative language as the complaint, as quoted above.

{¶ 9} On March 29, Johnson moved to dismiss for the reason that bank statements had not been furnished in discovery. At the argument on March 29 on Johnson's motion to dismiss, the prosecutor represented that Detective Bell of the West Carrollton Police Department had prepared a discovery packet, which the prosecutor claimed to have sent to defense counsel's office, "probably [in] February." The prosecutor also represented that he and Lennen, who was going to represent Johnson at trial, had "discussions several times about this case." The prosecutor represented that Lennen advised him that morning that he did not have the bank statements and that he told Lennen he did not have the statements, either. He then called Detective Bell, who did have the statements. The prosecutor stated that the documents were now available, and requested a short continuance to transmit the documents to Lennen so the case could be tried. Lennen did not refute any of the prosecutor's representations but, in response to the trial court's question, said he could not be ready for trial the following day. At the conclusion of argument, the trial court dismissed the case.

{¶ 10} The trial court relied on the Rules of Superintendence as justification for dismissal, which we believe was a weak reed upon which to lean. Although the Rules of Superintendence required this case to be tried within 90 days— Sup.R. 39(B)(1)—the first *pretrial* conference in this case was scheduled beyond

the 90–day deadline. When Johnson demanded a jury trial on the day scheduled for pretrial, the judge scheduled a prejury pretrial conference to take place three weeks later, and when that conference did not result in an agreed disposition, a jury trial was scheduled to take place six weeks later, on March 30. We realize that Johnson waived her speedy-trial rights, but the trial court's scheduling on this case suggests that if indeed Sup.R. 39(B)(1) was a factor in its decision to dismiss, it was a convenient rather than a compelling factor.

{¶ 11} We are also sympathetic to the state's suggestion that if Lennen had not received the bank statements, he should have let the prosecutor know before the eve of trial. From the complaint, defense counsel must have known that bank statements would be evidence in the case. The discovery packet had been sent to defense counsel in February. Lennen and the prosecutor had several discussions about the case prior to March 29. While Johnson undoubtedly was entitled to counsel who was prepared, we think the proper response would have been to grant the brief continuance requested by the prosecutor to allow Lennen to be prepared. This is especially true because Johnson had waived her speedy-trial rights and it appears that the state's failure to provide the bank statements was inadvertent rather than intentional. The prosecutor had, perhaps unwisely, delegated preparation of the discovery packet to Detective Bell, who may not have appreciated the import of the language "all other matters discoverable pursuant to Criminal Rule 16." In any event, there is no suggestion on this record that either the prosecutor or Detective Bell was intentionally depriving Johnson of discovery.

{¶ 12} Finally, the continuance requested by the prosecutor was the first request by either party for a continuance of either a pretrial or trial date.

{¶ 13} On the basis of the foregoing discussion, we are constrained to conclude that the trial court acted unreasonably in overruling the state's motion for a brief continuance and in dismissing this case.

{¶ 14} The assignment of error is sustained.

{¶ 15} The judgment of dismissal is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

MILLIGAN, J., concurs.

DONOVAN, J., dissents.

Donovan, Judge, dissenting.

{¶ 16} I disagree. "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, syllabus. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. "The trial court balances the court's interest in controlling its docket and the public's interest in an efficient judicial system with the possibility of prejudice to the defendant." *Sayre v. Hoelzle–Sayre* (1994), 100 Ohio App.3d 203, 653 N.E.2d 712. "Factors to be considered can include the length of the continuance requested, any prior continuance, inconvenience, reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Grant* (1993), 67 Ohio St.3d 465, 479, 620 N.E.2d 50. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921.

{¶ 17} "A trial court has broad discretion when imposing discovery sanctions." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, syllabus.

{¶ 18} At the hearing on Johnson's motion, the state appeared to suggest that counsel for Johnson bore some responsibility for the fact that Johnson did not have the bank statements: "[B]ased on the Bill of Particulars the State suggests that * * * [defense counsel] * * * should have known that this was what the case was all about and although he has a formal request for discovery, and the State is obligated to continue to give that discovery, there was no additional request made, which I understand that is [sic] doesn't have to be, that being said, the matter came up this morning." The state conceded that "the Court is aware that this matter has been going on for some time. I believe we [are] at the end of the line in terms of the Supreme Court Report. So it has been going on at least six months almost."

{¶ 19} The state appears to have been referring to the Rules of Superintendence of the Ohio Supreme Court. "Section 5(A), Article IV [of the] Ohio Constitution authorizes the Ohio Supreme Court to establish Rules of Superintendence. * * * These Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts." *State v. Perry*, Ross App. No. 05CA2839, 2006-Ohio-220, 2006 WL 158860, ¶ 14.

{¶ 20} "The very name and substance of these rules indicates that they were intended as an administrative directive from the Supreme Court to all the Court of Common Pleas [and Municipal Courts] of this state, and the individual judges thereof, succinctly setting forth procedures designed *to more clearly define judicial duties and responsibilities and to provide for more uniform and effective methods of general court administration. The Rules of Superintendence were not intended to function as rules of practice and procedure.*" (Emphasis sic.) *State v. Brown* (May 7, 1987), Cuyahoga App. No. 52098, 1987 WL 11197.

{¶ 21} "In municipal and county court, all criminal cases shall be tried within the time provided in Chapter 2945. of the Revised Code." Sup.R. 39. "[A] person against whom a charge of misdemeanor * * * is pending in a court of record, shall be brought to trial * * * [w]ithin ninety days after the person's arrest or the service of the summons, if the offense charged is a misdemeanor of the first * * * degree." R.C. 2945.71.

{¶ 22} Although Johnson waived her right to trial within the time set forth in R.C. 2945.71, the trial court properly remained mindful of its obligation to expedite the disposition of Johnson's case. Had the court required the defense to proceed on schedule, however, the prejudice to Johnson, as her counsel indicated, would have been clear; to prepare for trial in one day was not Johnson's "burden to carry," especially when Johnson was "looking at jail time." Any suggestion that the defense should have made a specific request for the bank statements is without merit. The prosecuting attorney bore the ultimate responsibility to provide counsel for Johnson with the bank records necessary to prove their case. This responsibility should not be foisted upon the detective nor the defendant. The trial judge properly excluded the bank's records. Just as important, the trial court did not abuse its discretion in denying the state's request for a continuance because the court has an absolute right to manage its docket, penalize the city for a major discovery infraction, and dismiss the case.

{¶ 23} I would affirm.

JOHN R. MILLIGAN, J., retired, of the Fifth District Court of Appeals, sitting by assignment.